IN THE COURT OF COMMON PLEAS
BELMONT COUNTY, OHIO

CHARLES E. PALMER and
VICKI PALMER,
58718 HORSEMILL ROAD
SHADYSIDE, OHIO 43947,

    Plaintiff,

vs.

TRI-STATE ENERGY HOLDINGS, INC.
107 EAST LLOYD STREET
EDENSBURG, PA 15931,

    and

GULFPORT ENERGY CORPORATION,
14212 N. MAY ST., STE 100
OKLAHOMA CITY, OK. 73134,

    and

WISHGARD, LLC
145 VANCEVILLE ROAD
EIGHTY-FOUR, PA 15330,

    and

AXELBRIDGE ENERGY, LLC
700 W. HARDWOOD DRIVE, STE C
HURST, TX 76054,

    and

WINDSOR OHIO, LLC
14301 CALIBER DRIVE, STE 300
OKLAHOMA CITY, OK 73134,

CASE NO: 12 CV 47

JUDGE: _____

COMPLAINT FOR A
DECLARATORY JUDGMENT

STATE OF OHIO
BELMONT COUNTY
CYNTHIA K. MCGEE, CLERK OF COURTS, DO
HEREBY CERTIFY THAT THE ABOVE IS A TRUE
AND CORRECT COPY OF THE ORIGINAL ON FILE
IN THIS OFFICE.
CYNTHIA K. MCGEE, CLERK OF COURTS
BY_____ DEPUTY

LANCIONE, LLOYD
& HOFFMAN
LAW OFFICE CO.
L.P.A.
ATTORNEYS AT LAW
BELLAIRE, OHIO 43906

1

and

RHINO EXPLORATION, LLC
424 LEWIS HARGETT CIRCLE
SUITE 250
LEXINGTON, KY 40503

       Defendants.

## FIRST CLAIM

1. The plaintiffs, Charles E. Palmer and Vicki Palmer, are residents of Belmont County, Ohio, and own property in Belmont County, of which approximately 140 acres is located in Mead Township, Belmont County, Ohio, and is the subject of this lawsuit.

2. The defendant, Tri-Star Energy Holdings, Inc. is a corporation doing business in Belmont County, Ohio. The defendants, Gulf Port Energy Corporation, Wishguard, LLC, Axelbridge Energy, LLC, Windsor Ohio, LLC, and Rhino Exploration, LLC, all have an interest with regard to the property of plaintiffs referenced to above.

3. On the 13th day of January, 2011, the plaintiffs were contacted by a landman who was an agent or employee of the defendant, Tri-Star Energy Holdings, Inc., and who presented them with an oil and gas lease. The plaintiffs signed the lease and a copy of that lease, with an addendum attached, is attached to this Complaint as an exhibit. The effective date of the lease was December 30, 2010.

LANCIONE, LLOYD
& HOFFMAN
LAW OFFICE CO.,
L. P. A.
ATTORNEYS AT LAW
BELLAIRE, OHIO 43906

2

4.  The plaintiffs bring this declaratory judgment action because certain controversies have arisen concerning the legal status of the oil and gas rights in and under the subject property. A declaration of the rights of the parties will terminate this controversy before one of the parties suffers irreparable damages.

5.  The defendant, Tri-Star Energy Holdings, Inc., enter into an agreement with the plaintiffs entitled "Confidential Exhibit "B" Order of Payment," which apparently was signed by representatives of Tri-Star Energy Holdings, Inc. and the plaintiffs. An unsigned copy of said agreement is attached hereto as an exhibit. The defendant, Tri-Star Energy Holdings, Inc., has failed to comply with the terms of the agreement in that said corporation did not pay the plaintiffs within the time limits set forth in the agreement.

## SECOND CLAIM

6.  At the time the landman from Tri-State Energy Holding, Inc. was negotiating with the plaintiffs, in order to obtain the plaintiff's signatures on the subject lease, the landman fraudulently informed the plaintiffs that the amount that they were going to get paid for their up front or bonus money would never go above the figure of $2,000.00 per acre that the landman was offering. Further, the landman fraudulently withheld information from the plaintiffs as to the real value of the leasehold, and of the future development of the Marcellous and Utica Shale formations. These fraudulent activities affected the plaintiffs decision to sign the lease, and if they had this information at the time of the signing, they would not have agreed to sign the lease for

LANCIONE, LLOYD
& HOFFMAN
LAW OFFICE CO.,
L.P.A.
ATTORNEYS AT LAW
BELLAIRE, OHIO 43906

3

the $2,000.00 per acre bonus money.

### THIRD CLAIM

7. The notarization on the lease may be invalid.

8. The equitable remedy of declaring the lease of the plaintiffs to be unenforceable and void is appropriately and required as any legal remedy would be inadequate as monetary damages are not ascertainable, and voiding the lease is necessary to do justice to the parties and is necessary to assure proper development of the land and the protection of plaintiffs' interest.

**WHEREFORE,** the plaintiffs demand judgment against the defendants, and demand the court to declare said lease to be invalid, void and unenforceable and order the defendants to release the lease of record, or issue an order which can be filed with the Belmont County Recorder showing that said lease is invalid, void and unenforceable.

LANCIONE, LLOYD & HOFFMAN
LAW OFFICE CO., L.P.A.

BY:

_____
RICHARD L. LANCIONE, ESQ. (0019623)
3800 JEFFERSON STREET
BELLAIRE, OH 43906
TELEPHONE: (740) 676-2034
TRIAL ATTORNEY FOR PLAINTIFF

LANCIONE, LLOYD
& HOFFMAN
LAW OFFICE CO.,
L.P.A.
ATTORNEYS AT LAW
BELLAIRE, OHIO 43906

4

*[signature]*

TRACEY LANCIONE LLOYD, ESQ. (0046702)
3800 JEFFERSON STREET
BELLAIRE, OH 43906
TELEPHONE: (740) 676-2034
TRIAL ATTORNEY FOR PLAINTIFF

LANCIONE, LLOYD
& HOFFMAN
LAW OFFICE CO.,
L.P.A.
ATTORNEYS AT LAW
BELLAIRE, OHIO 43906

**PAID-UP**
**OIL & GAS LEASE**

BM-KM  000004

Lease No. _____

This Lease made this 13th day of January 2011, by and between: Charles E. Palmer & Vicki A. Palmer (H&W), of 58718 Horsemill Hill Rd, Shadyside, OH 43947, hereinafter collectively called "Lessor," and TRI-STAR ENERGY HOLDINGS, INC., a Pennsylvania Corporation with mailing address of 107 East Lloyd Street, P.O. Box 330, Ebensburg, PA 15931, hereinafter called "Lessee."

WITNESSETH, that for and in consideration of One Dollar ($1.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and of the mutual covenants and agreements hereinafter set forth, the Lessor and Lessee agree as follows:

LEASING CLAUSE. Lessor hereby leases exclusively to Lessee all the oil and gas (including, but not limited to coal seam gas, coalbed methane gas, coalbed gas, methane gas, gob gas, occluded methane/natural gas and all associated natural gas and other hydrocarbons and non-hydrocarbons contained in, associated with, emitting from, or produced/originating within any formation, gob area, mined-out area, coal seam, and all communicating zones), and their liquid or gaseous constituents, whether hydrocarbon or non-hydrocarbon, underlying the land herein leased, together with such exclusive rights as may be necessary or convenient for Lessee, at its election, to explore for, develop, produce, measure, and market production from the Leasehold, and from adjoining lands, using methods and techniques which are not restricted to current technology, including the right to conduct geophysical and other exploratory tests; to drill, maintain, operate, cease to operate, plug, abandon, and remove wells; to use or install roads, electric power and telephone facilities, and to construct pipelines with appurtenant facilities, including data acquisition, compression and collection facilities for use in the production and transportation of products from the Leasehold or from neighboring lands across the Leasehold, to use oil, gas, and non-domestic water sources, free of cost, to store gas of any kind underground, regardless of the source thereof, including the injecting of gas therein and removing the same therefrom; to protect stored gas; to operate, maintain, repair, and remove material and equipment.

DESCRIPTION. The Leasehold is located in the Township of Mead, in the County of Belmont, in the State of Ohio, and described as follows:

Property Tax Parcel Identification Number  15-00666.000, 15-00593.000, 29-02715.000, 26-00359.002, 17-00390.000, 15-01311.000, 15-00852.000, 15-00707.000, 15-00592.000, 15-00430.000, 15-00353.000

and is bounded formerly or currently as follows:
On the North by lands of  Kelly;
On the East by lands of  McVay;
On the South by lands of  Brown;
On the West by lands of  Zadell;

including lands acquired from Brian L. Schambach, by virtue of deed dated 7.6.09, and recorded in Deed Book 193/733, at Page 680/690, at the Recorder's office of Belmont County, Ohio, and described for the purposes of this agreement as containing a total of 140.53 Leasehold acres, whether actually more or less, and including contiguous lands owned by Lessor. This Lease also covers and includes, in addition to that above described, all land, if any, contiguous or adjacent to or adjoining the land above described and (a) owned or claimed by Lessor by limitation, prescription, possession, reversion or unrecorded instrument or (b) as to which Lessor has a preference right of acquisition. Lessor agrees to execute any supplemental instrument requested by Lessee for a more complete or accurate description of said land.

LEASE TERM. This Lease shall remain in force for a primary term of Five (5) years from 12:00 A.M. December 30, 2010 (effective date) to 11:59 P.M December 29, 2015 (last day of primary term) and shall continue beyond the primary term as to the entirety of the Leasehold if any of the following is satisfied: (i) operations are conducted on the Leasehold or lands pooled/unitized therewith in search of oil, gas, or their constituents, or (ii) a well deemed by Lessee to be capable of production is located on the Leasehold or lands pooled/unitized therewith, or (iii) oil or gas, or their constituents, are produced from the Leasehold or lands pooled/unitized therewith, or (iv) if the Leasehold or lands pooled/unitized therewith is used for the underground storage of gas, or for the protection of stored gas, or (v) if prescribed payments are made, or (vi) if Lessee's operations are delayed, postponed or interrupted as a result of any coal, stone or other mining or mining related operation under any existing and effective lease, permit or authorization covering such operations on the leased premises or on other lands affecting the leased premises, such delay will automatically extend the primary or secondary term of this oil and gas lease without additional compensation or performance by Lessee for a period of time equal to any such delay, postponement or interruption.

If there is any dispute concerning the extension of this Lease beyond the primary term by reason of any of the alternative mechanisms specified herein, the payment to the Lessor of the prescribed payments provided below shall be conclusive evidence that the Lease has been extended beyond the primary term.

EXTENSION OF PRIMARY TERM. Lessee has the option to extend the primary term of this Lease for one additional term of five (5) years from the expiration of the primary term of this Lease, said extension to be under the same terms and conditions as contained in this Lease. Lessee may exercise this option to extend this Lease if on or before the expiration date of the primary term of this Lease, Lessee pays or tenders to the Lessor or to the Lessor's credit an extension payment of two-thousand, five hundred dollars ($2,500.00) per Leasehold acre. Exercise of this option is at Lessee's sole discretion and may be invoked by Lessee where no other alternative of the Lease Term clause extends this Lease beyond the primary term.

NO AUTOMATIC TERMINATION OR FORFEITURE.

(A) CONSTRUCTION OF LEASE: The language of this Lease (including, but not limited to, the Lease Term and Extension of Term clauses) shall never be read as language of special limitation. This Lease shall be construed against termination, forfeiture, cancellation or expiration and in favor of giving effect to the continuation of this Lease where the circumstances exist to maintain this Lease in effect under any of the alternative mechanisms set forth above. In connection therewith, (i) a well shall be deemed to be capable of production if it has the capacity to produce a profit over operating costs, without regard to any capital costs to drill or equip the well, or to deliver the oil or gas to market, and (ii) the Lessee shall be deemed to be conducting operations in search of oil or gas, or their constituents, if the Lessee is engaged in geophysical and other exploratory work including, but not limited to, activities to drill an initial well, to drill a new well, or to rework, stimulate, deepen, sidetrack, frac, plug back in the same or different formation or repair a well or equipment on the Leasehold or any lands pooled/unitized therewith (such activities shall include, but not be limited to, performing any preliminary or preparatory work necessary for drilling, conducting internal technical analysis to initiate and/or further develop a well, obtaining permits and approvals associated therewith and may include reasonable gaps in activities provided that there is a continuum of activities showing a good faith effort to develop a well or that the cessation or interruption of activities was beyond

Page 1 of 7

Lessor(s) Initials: CEP / VAP

the control of Lessee, including interruptions caused by the acts of third parties over whom Lessee has no control or regulatory delays associated with any approval process required for conducting such activities).

(B) LIMITATION OF FORFEITURE: This Lease shall never be subject to a civil action or proceeding to enforce a claim of termination, cancellation, expiration or forfeiture due to any action or inaction by the Lessee, including, but not limited to making any prescribed payments authorized under the terms of this Lease, unless the Lessee has received written notice of Lessor's demand and thereafter fails or refuses to satisfy or provide justification responding to Lessor's demand within 60 days from the receipt of such notice. If Lessee timely responds to Lessor's demand, but in good faith disagrees with Lessor's position and sets forth the reasons therefore, such a response shall be deemed to satisfy this provision, this Lease shall continue in full force and effect and no further damages (or other claims for relief) will accrue in Lessor's favor during the pendency of the dispute, other than claims for payments that may be due under the terms of this Lease.

PAYMENTS TO LESSOR. In addition to the bonus paid by Lessee for the execution hereof, Lessee covenants to pay Lessor, proportionate to Lessor's percentage of ownership, as follows:

(A) DELAY RENTAL: To pay Lessor as Delay Rental, after the first year, at the rate of **five dollars ($5.00)** per net acre per year payable in advance. The parties hereto agree that this is a **Paid-Up Lease** with no further Delay Rental and/or Delay in Marketing payments due to Lessor during the primary term hereof.

(B) ROYALTY: To pay Lessor as Royalty, less all taxes, assessments, and adjustments on production from the Leasehold, as follows:

    1. OIL: To deliver to the credit of Lessor, free of cost, a Royalty of the equal **fifteen and one-half percent (15.50%)** part of all oil and any constituents thereof produced and marketed from the Leasehold.

    2. GAS: To pay Lessor an amount equal to **fifteen and one-half percent (15.50%)** of the revenue realized by Lessee for all gas and the constituents thereof produced and marketed from the Leasehold, less the cost to transport, treat and process the gas and any losses in volumes to point of measurement that determines the revenue realized by Lessee. Lessee may withhold Royalty payment until such time as the total withheld exceeds fifty dollars ($50.00).

(C) DELAY IN MARKETING: In the event that Lessee drills a well on the Leasehold or lands pooled/unitized therewith that is awaiting completion, or that Lessee deems to be capable of production, but does not market producible gas, oil, or their constituents therefrom, and there is no other basis for extending this Lease, Lessee shall pay after the primary term and until such time as marketing is established (or Lessee surrenders the Lease) a Delay in Marketing payment equal in amount and frequency to the annual Delay Rental payment, and this Lease shall remain in full force and effect to the same extent as payment of Royalty.

(D) SHUT-IN: In the event that production of oil, gas, or their constituents is interrupted and not marketed for a period of twelve (12) months, and there is no producing well on the Leasehold or lands pooled/unitized therewith, Lessee shall thereafter, as Royalty for constructive production, pay a Shut-in Royalty equal in amount and frequency to the annual Delay Rental payment until such time as production is re-established (or lessee surrenders the Lease) and this Lease shall remain in full force and effect. During Shut-in, Lessee shall have the right to rework, stimulate, or deepen any well on the Leasehold or to drill a new well on the Leasehold in an effort to re-establish production, whether from an original producing formation or from a different formation. In the event that the production from the only producing well on the Leasehold is interrupted for a period of less than twelve (12) months, this Lease shall remain in full force and effect without payment of Royalty or Shut-in Royalty.

(E) DAMAGES: Lessee will remove unnecessary equipment and materials and reclaim all disturbed lands at the completion of activities, and Lessee agrees to repair any damaged improvements to the land and pay for the loss of growing crops or marketable timber.

(F) MANNER OF PAYMENT: Lessee shall make or tender all payments due hereunder by check, payable to Lessor, at Lessor's last known address, and Lessee may withhold any payment pending notification by Lessor of a change in address. Payment may be tendered by mail or any comparable method (e.g., Federal Express), and payment is deemed complete upon mailing or dispatch. Where the due date for any payment specified herein falls on a holiday, Saturday or Sunday, payment tendered (mailed or dispatched) on the next business day is timely.

(G) CHANGE IN LAND OWNERSHIP: Lessee shall not be bound by any change in the ownership of the Leasehold until furnished with such documentation as Lessee may reasonably require. Pending the receipt of documentation, Lessee may elect either to continue to make or withhold payments as if such a change had not occurred.

(H) TITLE: If Lessee receives evidence that Lessor does not have title to all or any part of the rights herein leased, Lessee may immediately withhold payments that would be otherwise due and payable hereunder to Lessor until the adverse claim is fully resolved.

(I) LIENS: Lessee may at its option pay and discharge any past due taxes, mortgages, judgments, or other liens and encumbrances on or against any land or interest included in the Leasehold; and Lessee shall be entitled to recover from the debtor, with legal interest and costs, by deduction from any future payments to Lessor or by any other lawful means. In the event the leased lands are encumbered by a prior mortgage, then, notwithstanding anything contained herein to the contrary, Lessee shall have the right to suspend the payment of any royalties due hereunder, without liability for interest, until such time as Lessor obtains at its own expense a subordination of the mortgage in a form acceptable to Lessee.

(J) CHARACTERIZATION OF PAYMENTS: Payments set forth herein are covenants, not special limitations, regardless of the manner in which these payments may be invoked. Any failure on the part of the Lessee to timely or otherwise properly tender payment can never result in an automatic termination, expiration, cancellation, or forfeiture of this Lease. Lessor recognizes and acknowledges that oil and gas lease payments, in the form of rental, bonus and royalty, can vary depending on multiple factors and that this Lease is the product of good faith negotiations. Lessor hereby agrees that the payment terms, as set forth herein, and any bonus payments paid to Lessor constitute full consideration for the Leasehold. Lessor further agrees that such payment terms and bonus payments are final and that Lessor will not seek to amend or modify the lease payments, or seek additional consideration based upon any differing terms which Lessee has or will negotiate with any other lessor/oil and gas owner.

(K) PAYMENT REDUCTIONS: If Lessor owns a lesser interest in the oil or gas than the entire undivided fee simple estate, then the rentals (except for Delay Rental payments as set forth above), royalties and shut-in royalties hereunder shall be paid to Lessor only in the proportion which Lessor's interest bears to the whole and undivided fee.

UNITIZATION AND POOLING. Lessor grants Lessee the right to pool, unitize, or combine all or parts of the Leasehold with other lands, whether contiguous or not contiguous, leased or unleased, whether owned by Lessee or by others, at a time before or after drilling to create drilling or production units either by contract right or pursuant to governmental authorization. Pooling or unitizing in one or more instances shall not exhaust Lessee's pooling and unitizing rights hereunder, and Lessee is granted the right to change the size, shape, and conditions of operation or payment of any unit created. Lessor agrees to accept and receive out of the production or the revenue realized from the production of such unit, such proportional share of the Royalty from each unit well as the number of Leasehold acres included in the unit bears to the total number of acres in the unit. Otherwise, as to any part of the unit, drilling, operations in preparation for drilling, production, or shut-in production from the unit, or payment of Royalty, Shut-in Royalty, Delay in Marketing payment or Delay Rental attributable to any part of the unit (including non-Leasehold land) shall have the same effect upon the terms of this Lease as if a well were located on, or the subject activity attributable to, the Leasehold. In the event of conflict or inconsistency between the Leasehold acres ascribed to the Lease, and the local property tax assessment calculation of the

Page 2 of 7

Lessor(s) Initials: _____

lands covered by the Lease, or the deeded acreage amount, Lessee may, at its option, rely on the latter as being determinative for the purposes of this paragraph.

**FACILITIES.** Lessee shall not drill a well on the Leasehold within 500 feet of any structure located on the Leasehold without Lessor's written consent. Lessor shall not erect any building or structure, or plant any trees within 200 feet of a well or within 25 feet of a pipeline without Lessee's written consent. Lessor shall not improve, modify, degrade, or restrict roads and facilities built by Lessee without Lessee's written consent.

**CONVERSION TO STORAGE.** Lessee is hereby granted the right to convert the Leasehold or lands pooled/unitized therewith to gas storage. At the time of conversion, Lessee shall pay Lessor's proportionate part for the estimated recoverable gas remaining in any well drilled pursuant to this Lease using methods of calculating gas reserves as are generally accepted by the natural gas industry and, in the event that all wells on the Leasehold and/or lands pooled/unitized therewith have permanently ceased production, Lessor shall be paid a Conversion to Storage payment in an amount equal to Delay Rental for as long thereafter as the Leasehold or lands pooled/unitized therewith is/are used for gas storage or for protection of gas storage; such Conversion to Storage payment shall first become due upon the next ensuing Delay Rental anniversary date. The use of any part of the Leasehold or lands pooled or unitized therewith for the underground storage of gas, or for the protection of stored gas will extend this Lease beyond the primary term as to all rights granted by this Lease, including but not limited to production rights, regardless of whether the production and storage rights are owned together or separately.

~~DISPOSAL AND INJECTION WELLS. Lessor hereby grants to Lessee the right to drill wells and/or re-enter existing wells, including necessary location, roadway and pipeline easements and rights-of-way, on any part of the Leasehold or lands pooled or unitized therewith for the disposal and/or injection into any subsurface strata, other than a potable water strata, of oil, gas, brine, completion and production fluids, waste water and any hydrocarbon-related substances from any source, including, but not limited to wells on the Leasehold or lands pooled or unitized therewith or from properties and lands outside the Leasehold or lands pooled or unitized therewith, and to conduct all operations as may be required, for so long as necessary and required by Lessee for purposes as herein provided. If, at the expiration of the primary term, Lessee is disposing and/or injecting into any subsurface strata underlying the Leasehold or lands pooled or unitized therewith or conducting operations for such disposal and/or injection and this lease is not being maintained by any other provisions contained herein and no other payments are being made to Lessor as prescribed hereunder, Lessee shall pay to Lessor the sum of one thousand dollars ($1,000.00) per year, proportionately reduced to Lessor's ownership in the Leasehold and surface as it bears to the full and undivided estate, beginning on the next anniversary date of this Lease and said payment and term of this Lease, insofar as to terms and provisions contained herein applicable to disposal and injection wells, shall continue annually thereafter for so long as necessary and required by Lessee for purposes as herein provided and until all disposal and/or injection wells located on the Leasehold or on lands pooled or unitized therewith are plugged and abandoned. Lessor agrees that if required by Lessee, regulatory agency or governmental authority having jurisdiction, Lessor shall enter a separate Disposal and Injection Agreement with Lessee for the purposes as herein provided.~~

**TITLE AND INTERESTS.** Lessor hereby warrants generally and agrees to defend title to the Leasehold and covenants that Lessee shall have quiet enjoyment hereunder and shall have benefit of the doctrine of after acquired title. Should any person having title to the Leasehold fail to execute this Lease, the Lease shall nevertheless be binding upon all persons who do execute it as Lessor.

**LEASE DEVELOPMENT.** There is no implied covenant to drill, prevent drainage, further develop or market production within the primary term or any extension of term of this Lease. There shall be no Leasehold forfeiture, termination, expiration or cancellation for failure to comply with said implied covenants. Provisions herein, including, but not limited to the prescribed payments, constitute full compensation for the privileges herein granted.

**COVENANTS.** This Lease and its expressed or implied covenants shall not be subject to termination, forfeiture of rights, or damages due to failure to comply with obligations if compliance is effectively prevented by federal, state, or local law, regulation, or decree, or the acts of God and/or third parties over whom Lessee has no control.

**RIGHT OF FIRST REFUSAL.** If at any time within the primary term of this Lease or any continuation or extension thereof, Lessor receives any bona fide offer, acceptable to Lessor, to grant an additional lease ("Top Lease") covering all or part of the Leasehold, Lessee shall have the continuing option by meeting any such offer to acquire a Top Lease on equivalent terms and conditions. Any offer must be in writing and must set forth the proposed Lessee's name, bonus consideration and royalty consideration to be paid for such Top Lease, and include a copy of the lease form to be utilized reflecting all pertinent and relevant terms and conditions of the Top Lease. Lessee shall have fifteen (15) days after receipt from Lessor of a complete copy of any such offer to advise Lessor in writing of its election to enter into an oil and gas lease with Lessor on equivalent terms and conditions. If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, Lessor shall have the right to accept said offer. Any Top Lease granted by Lessor in violation of this provision shall be null and void.

**ARBITRATION.** In the event of a disagreement between Lessor and Lessee concerning this Lease or the associated Order of Payment, performance thereunder, or damages caused by Lessee's operations, the resolution of all such disputes shall be determined by arbitration in accordance with the rules of the American Arbitration Association. Arbitration shall be the exclusive remedy and cover all disputes, including but not limited to, the formation, execution, validity and performance of the Lease and Order of Payment. All fees and costs associated with the arbitration shall be borne equally by Lessor and Lessee.

**ENTIRE CONTRACT.** The entire agreement between Lessor and Lessee is embodied herein and in the associated Order of Payment (if any). No oral warranties, representations, or promises have been made or relied upon by either party as an inducement to or modification of this Lease.

**TITLE CURATIVE.** Lessor agrees to execute affidavits, ratifications, amendments, permits and other instruments as may be necessary to carry out the purpose of this lease.

**SURRENDER.** Lessee, at any time, and from time to time, may surrender and cancel this Lease as to all or any part of the Leasehold by recording a Surrender of Lease and thereupon this Lease, and the rights and obligations of the parties hereunder, shall terminate as to the part so surrendered; provided, however, that upon each surrender as to any part of the Leasehold, Lessee shall have reasonable and convenient easements for then existing wells, pipelines, pole lines, roadways and other facilities on the lands surrendered.

**SUCCESSORS.** All rights, duties, and liabilities herein benefit and bind Lessor and Lessee and their heirs, successors, and assigns.

**FORCE MAJEURE.** All express or implied covenants of this Lease shall be subject to all applicable laws, rules, regulations and orders. When drilling, reworking, production or other operations hereunder, or Lessee's fulfillment of its obligations hereunder are prevented or delayed by such laws, rules, regulations or orders, or by inability to obtain necessary permits, equipment, services, material, water, electricity, fuel, access or easements, or by fire, flood, adverse weather conditions, war, sabotage, rebellion, insurrection, riot, strike or labor disputes, or by inability to obtain a satisfactory market for production or failure of purchasers or carriers to take or transport such production, or by any other cause not reasonably within Lessee's control, this Lease shall not terminate, in whole or in part, because of such prevention or delay, and, at Lessee's option, the period of such prevention or delay shall be added to the term hereof. Lessee shall not be liable in damages for breach of any express or implied covenants of this Lease for failure to comply therewith, if compliance is prevented by, or failure is the result of any applicable laws, rules, regulations or orders or operation of force majeure.

Page 3 of 7

Lessor(s) Initials: _____

**SEVERABILITY.** This Lease is intended to comply with all applicable laws, rules, regulations, ordinances and governmental orders. If any provision of this Lease is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions shall survive and continue in full force and effect to the maximum extent allowed by law. If a court of competent jurisdiction holds any provision of this Lease invalid, void, or unenforceable under applicable law, the court shall give the provision the greatest effect possible under the law and modify the provision so as to conform to applicable law if that can be done in a manner which does not frustrate the purpose of this Lease.

**COUNTERPARTS.** This Lease may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Lease and all of which, when taken together, will be deemed to constitute one and the same agreement.

See Exhibit "A" attached hereto and by reference made a part hereof

IN WITNESS WHEREOF, Lessor hereunto sets hand and seal.

Witness _Judith D. Chimley_ _____ _Charles E. Palmer_ (Seal)
Witness _Judith D. Chimley_ _____ _Vicki Palmer_ (Seal)
Witness _____ _____ (Seal)
Witness _____ _____ (Seal)

### ACKNOWLEDGMENT

STATE OF OHIO
COUNTY OF _Belmont_        } SS:

On this, the _3rd_ day of _Jan_, 2010, before me _Judith D. Chimley_, the undersigned officer, personally appeared _Charles E. Palmer and Vicki A. Palmer_, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission Expires: _Sept 24, 2011_
Signature/Notary Public: _Judith D. Chimley_
Name/Notary Public (print): _Judith D. Chimley_

Judith D. Chimley
Notary Public, State of Ohio
My Commission Expires September 24, 2011

STATE OF OHIO
COUNTY OF _____        } SS:

On this, the ___ day of _____, 2010, before me _____, the undersigned officer, personally appeared _____, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission Expires: _____
Signature/Notary Public: _____
Name/Notary Public (print): _____

### CORPORATE ACKNOWLEDGMENT

STATE OF OHIO
COUNTY OF _____        } SS:

On this, the ___ day of _____, 2010, before me _____, the undersigned officer, personally appeared _____, who acknowledged himself to be the ____ of ____, a corporation, and that he as such ____, being authorized to do so, executed foregoing instrument for the purpose therein contained by signing the name of the corporation by himself as ____.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission Expires: _____
Signature/Notary Public: _____
Name/Notary Public (print): _____

Recorder Return To:

TRI-STAR ENERGY HOLDINGS, INC., 107 East Lloyd Street, P.O. Box 330, Ebensburg, PA 15931

Page 4 of 7

Lessor(s) Initials: _CP_ / _VP_

# EXHIBIT A

Attached to and made a part of that certain Oil and Gas Lease dated the 15th day of January, 2011, by and between Charles E. Palmer & Vicki A. Palmer (H&W), as Lessor(s), and TRI-STAR ENERGY HOLDINGS, INC., as Lessee ("Lease"), to wit:

In the event of a conflict between the terms of this Exhibit "A" and the terms of the printed form to which it is attached, the terms of this Exhibit "A" shall control.

Lessor hereby warrants that Lessor is not currently receiving any bonus, rental, production royalty as the result of any prior oil and gas lease covering any or all of the subject premises, and that there are no commercially producing wells currently existing on the subject premises, or upon other lands within the boundaries of a drilling or production unit utilizing all or a part of the subject premises.

## PRODUCTION

### Commencement of Operations
Commencement of operations shall be defined as Lessee having secured a drilling permit from the State and Further entering upon the herein described premises with equipment necessary to build any access road(s) for drilling of a well subsequently followed by a drilling rig for the spudding of the well to be drilled.

### Shut-In
It is understood and agreed that this lease may not be maintained in force for an continuous period of time longer than thirty-six (36) consecutive months, or sixty (60) cumulative months after the expirations of the primary term hereof solely by the provision of the shut-in royalty clause. The shut-in status of any well shall persist only so long as it is necessary to correct, through the exercise of good faith and due diligence, the condition giving the rise to the shut-in of the well.

### Limitation on Pooled Unit
If a well drilled is classified as a horizontal oil or gas well drilled to any geologic formation whether oil or gas, then the maximum size of the pooled production unit shall not exceed 640 contiguous acres, except said production unit may exceed 640 contiguous acres, but in no event larger than 1,280 contiguous acres, if the lateral extent of horizontal wellbores in said formation extend beyond the boundary of a 640 contiguous acre unit, and/or in the event that a reasonably prudent operator would expect that the entire acreage within such larger unit will be effectively and efficiently developed and drained from a central pad site location. The pooled production unit shall to the extent practicable be parallel and centered on the lateral wellbores to be drilled within the unit. Lessor and Lessee agree to abide by any State pooling or unitization orders.

### Pugh Clause
In the event a pooled unit is created which encompasses land located outside the lease premises and some, but not all, of the Leasehold premises, any drilling, completing, testing, deepening operations or reworking operations on or production from a well located on that pooled unit shall continue this Lease in full force and effect but only as to that part of the lease premises contained within the pooled unit and only as to those formations and horizons found from the surface down to the deepest depth drilled; specifically, this lease shall automatically terminate two (2) years ("Extended Term") after the expiration of the primary term or any extension provided herein as to such portions of leased premises not contained within a pooled unit and those formations and horizons below the deepest depth drilled. However, Lessee may, at its option, pay the extension payment included in this lease one time, and one time only, prior to the expiration of the two (2) year Extended Term on the portions of the Leasehold not included in a production unit or below the deepest depth drilled to continue all of its rights in and to the Leasehold or surrender such portions of the Leasehold not included in a production unit or those formations and horizons found below the deepest depth drilled.

## ROYALTY

### Market Enhancement Clause
It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessor's actual cost of such enhancements. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

## USE OF PROPERTY

### Surface Damage Clause:
Provided that Lessor is the current surface owner of the affected lands at the time of Lessee's surface operations, Lessee agrees to pay Lessor Fifteen Thousand Dollars and 00/100 ($15,000.00) as a supplemental surface damage payment for each pad site built on the herein described leased premises.

### Surface Restoration Clause:
It is agreed and understood that the Lessee shall repair and restore the surface of said premises as nearly as practicable, as a result of the Lessee's operations, to the condition in which said land existed at the time of the commencement of drilling operations upon above described land. This work shall be completed within a reasonable

Page 5 of 7

Lessor(s) Initials: CEP VAP

amount of time after all cessation of the drilling operations upon the said lands. This work shall be done at the sole expense of the Lessee.

### Pipeline – No Foreign Gas
Any pipelines constructed pursuant to the terms of this lease shall be for transporting oil and/or gas from a well(s) drilled on the leased premises or lands pooled therewith unless the prior written consent of Lessor is obtained.

### Pipeline – Plow Depth
When requested in writing by Lessor prior to the laying of pipeline, Lessee shall bury the pipeline a minimum depth of 36 inches below ground level, where possible.

### No Compression on Leasehold
It is agreed and understood that compression facilities will not be placed on the leasehold unless written consent is provided by the Lessor, which consent shall not be unreasonably withheld, delayed or conditioned.

### Fence Clause
Upon Lessor's written request, Lessee shall at its sole cost, expense, and design install fencing for the protection of livestock around any well site(s), tank battery (ies) or facility (ies) installed on the leased premises by Lessee provided that Lessor is the current surface owner of the affected lands at the time of Lessee's surface operations.

### Gate Clause
Upon the written request of Lessor, Lessee shall install at its sole cost and expense a gate at the entrance of any road constructed by Lessee on the leased premises provided that Lessor is the current surface owner of the affected lands at the time of Lessee's surface operations.

### Timber Clause
Lessee and Lessor agree that prior to the removal of any and all marketable timber resulting from Lessee's operations under the terms of this lease, an appraisal shall be constructed by a qualified third party forester and Lessee shall pay Lessor the said appraisal value prior to harvesting. In the event agreement is not reached as to value each party shall select an appraiser and the two appraisers shall select a third- party neutral appraiser who shall determine the value of the timber which will be paid by Lessee to prior to harvesting.

### Location Approval
Location of any well, access roads, pipelines routes, tank batteries, compressor, or other facilities shall be approved by Lessor or one of their representatives in writing prior to location thereof. Such approval shall not be unreasonably withheld, conditioned, or delayed. Upon receipt of Lessee's written site-location approval request, Lessor shall have fourteen (14) days from the date of said correspondence to approve in writing or to advise Lessee in writing of Lessor's disapproval of a specific location(s) associated with Lessee's site plan and to provide Lessee with an alternate location(s) that is deemed to be reasonable, economically feasible and at a legal location pursuant to all applicable rules and regulations. Lessor's failure to notify Lessee of written approval of said site plan or to provide Lessee with written objection and an alternate location(s) within fourteen (14) days shall constitute Lessor's approval of the proposed site location.

## WATER

### Water Quality
Lessee shall have Lessor's current water supply sampled and tested prior to spudding of any well drilled on the leased premises, or drilled on acreage unitized with the leasehold. Should Lessor experience a material adverse change in the quality of Lessor's water supply, during or immediately after the completion of Lessee's drilling operations, Lessee shall, within 48 hours of Lessor's written request, sample and test Lessor's water supply at Lessee's expense. Should such a test reflect a material adverse change as the result of Lessee's drilling operations, Lessee agrees to provide Lessor with potable water until such a time as Lessor's water source has been repaired or replaced with a source of substantially similar quality.

### No Water Usage
Lessee is not granted any right whatsoever to use any water within the leasehold for its operations, including, but not limited to wells, ponds, streams, and creeks, unless Lessor should give written consent to do so.

### Fresh Water Damage Protection
In the event any activity carried on by the Lessee pursuant to the terms of this lease damages, disturbs, or injures Lessor's fresh water well or source located on these leased premises, Lessee shall at its sole cost and expense take all necessary steps to correct any such damage, disturbance or injury.

## MISCELLANEOUS

### Compliance Clause
Lessee's operations on said land shall be in compliance with all applicable federal and state regulations.

### No Storage Rights Clause
Notwithstanding anything herein contained to the contrary, Lessee agrees the herein described leased premises shall not be used for the purpose of gas storage as defined by the Federal Energy Regulatory Commission. Any reference to gas storage contained in this lease is hereby deleted. If Lessor wishes to enter into an agreement regarding gas storage using the leased premises with a third party, Lessor shall first give Lessee written notice of the identity of the third party, the price or the consideration for which the third party is prepared to offer, the effective date and closing

Page 6 of 7

Lessor(s) Initials: 

date of the transaction and any other information respecting the transaction which Lessee believes would be material to the exercise of the offering. Lessor does hereby grant Lessee the first option and right to purchase the gas storage rights by matching and tendering to the Lessor any third party's offering within 30 days of receipt of notice from Lessor.

### Oil & Gas Only
This lease shall be deemed to cover only oil and gas and associated hydrocarbons produced through the wellbore.

### Hold Harmless Clause
Lessee agrees it will protect and save and keep Lessor harmless and indemnified against and from any penalty or damage or charges imposed for any violation of any laws or ordinances, whether occasioned by the neglect of Lessee or those holding under Lessee, and Lessee will at all times protect, indemnify and save and keep harmless the Lessor against and from any and all loss, damage or expense, including any injury to any person or property whomsoever or whatsoever arising out of or caused by any negligence of the Lessee or those holding under Lessee. Lessor shall be named as an additional insured on Lessee's liability insurance policy. Prior to the commencement of drilling operations, Lessee shall provide to Lessor, a certificate of evidence for liability, workman's compensation and disability insurance.

### Venue and Choice of Law
The venue for all actions and proceedings arising from this Lease shall be in the county in which the real property is located. The law of the state in which the real property is located shall apply.

### Ad Valorem Taxes Clause
Lessee and Lessor agree to pay their proportionate share of any increase in ad valorem taxes attributable to, or resulting from, the assessment of oil and gas due to production from the leased premises.

### Special Warranty Title
It is understood that Lessor warrants title to said property only with respect that the title is good to the best of Lessor's knowledge and Lessee agrees that no claims will be made against Lessor pertaining to warranty of title.

### Audit Clause
Lessee further grants to Lessor the right annually to examine, audit, or inspect books, records, and accounts of Lessee pertinent to the purpose of verifying the accuracy of the reports and statements furnished to Lessor, and for checking the amount of payments lawfully due the Lessor under the terms of this agreement. In exercising this right, Lessor shall give reasonable notice to Lessee of its intended audit and such audit shall be conducted during normal business hours at the office of Lessee. Such examination and audit shall be at the sole cost and expense of Lessor.

### Clean and Green Clause
Lessee agrees that if and when any penalty, rollback or recapture of tax abatements created or imposed under any governmental program such as, but not limited to CREP, CRP and Clean and Green that is levied on Lessor solely as a result of Lessee's operations on leased premises, Lessee will reimburse Lessor upon written request and copy of the penalty notice.

### Release of Lease
Upon written request by Lessor and after termination, expiration, or surrender of this lease in whole or in part, Lessee shall provide Lessor with a copy of an appropriate release of lease.

### Memorandum to be Filed
Lessor agrees that a Memorandum may be filed by Lessee, at Lessee's expense, in place of this Oil and Gas Lease, and attached exhibits. Lessee shall provide Lessor with a photocopy of the fully executed Lease, all Exhibits, and Memorandum as soon as possible after such time as this Lease has been accepted by Lessee and Memorandum recorded.

Page 7 of 7   Lessor(s) Initials: _____  
VAP

THIS PAGE SHALL NOT BE RECORDED!

## CONFIDENTIAL EXHIBIT "B" – ORDER OF PAYMENT

By executing and delivering the attached Paid-Up Oil and Gas Lease ("Lease") to TRI-STAR ENERGY HOLDINGS, INC., ("Lessee"), I/we, Lessor(s) understand that TRI-STAR ENERGY HOLDINGS, INC. shall pay initial non-refundable consideration in the amount of $1.00 per parcel of property listed on the Lease. Lessee shall then have ninety (90) business days from the effective date of Lease to review and approve title of said parcel(s) and additional adjacent parcel(s) not owned by Lessor(s) tendered as part of the "co-op" leasing process, and to tender payment of signing bonus as stated below. Should Lessor own more or less acreage as listed on Lease, Lessee may adjust payment accordingly without notice to Lessor(s). Lessor(s) understand that payment of the signing bonus is conditioned and contingent on 1) Lessee's review and approval of title of parcels listed on Lease; 2) Lessee's review of all or part of the "co-op" parcels submitted; and 3) final approval by Lessee's management to tender payment. Lessee reserves the right to reject said Lease should title be unacceptable to Lessee, or for any other reason, including, but not limited to, insufficient funding for payment to be made to Lessor(s), and insufficient assignment interest in the parcel(s).



ONE DOLLAR ($1.00) PER PARCEL CONSIDERATION PAID TO AND ACKNOWLEDGED BY LESSOR UPON LEASE EXECUTION AND TWO THOUSAND DOLLARS ($2,000.00) PER NET LEASEHOLD ACRE AS LISTED ON THE LEASE TO BE PAID TO LESSOR WITHIN 90 BUSINESS DAYS FROM THE EFFECTIVE DATE OF THIS LEASE; SHOULD LESSEE FAIL TO TENDER PAYMENT WITHIN THE TIME PERIOD SPECIFIED HEREIN, THE LEASE SHALL BE DEEMED TO HAVE BEEN REJECTED BY LESSEE AND, UPON WRITTEN NOTIFICATION OF REJECTION BY REGULAR MAIL TO LESSOR, LESSEE SHALL HAVE NO FURTHER PAYMENT OBLIGATION TO LESSOR, AND IN THAT EVENT LESSOR RELEASES LESSEE FROM SAID PAYMENT OBLIGATION.

Lessor(s) expressly authorize and direct any payment of said $2000 per net acre pursuant to the Lease to be as follows: A net payment to Lessor(s) in the amount of One Thousand Eight Hundred Forty Dollars ($1,840.00) per net acre and an administration fee of One Hundred Sixty Dollars ($160.00) per net acre paid directly to WISHGARD, LLC, of 1922 Altmar Street, Pittsburgh, PA, 15226.

Attach additional Exhibit "B" for additional Lessor(s) with ownership interests that wish to have payment directed to a different address.

LEASE EXECUTION DATE: _____

EFFECTIVE DATE OF LEASE: Febuary 29, 2011

NAME OF LESSOR(S): _____

OWNERSHIP INTEREST (EXPRESSED BY PERCENTAGE): _____ %

MAIL LESSOR(S) PAYMENT TO: _____

_____

_____

LESSOR(S) DAYTIME PHONE: _____

LESSOR(S):

By: _____          By: _____

By: _____          By: _____

By: _____          By: _____

FOR INTERNAL USE ONLY     Lease #: _____    Leasehold Acres: _____
Ownership Interest _____    Total Payment Amount _____