# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Charles E. Palmer, *et al.*,

      Plaintiffs,                            Case No. 2:12–cv–178

      v.                                   Judge Michael H. Watson

Tri-Star Energy Holdings, Inc., *et al.*,

      Defendants.

## OPINION AND ORDER

Charles and Vicki Palmer ("Plaintiffs" or "Lessors") sue various defendants in this diversity action involving an oil and gas lease ("Lease") they executed with Defendant Tri-Star Energy Holdings, Inc. ("Tri-Star" or "Lessee"). Defendants move separately to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 48, 49, 51, 52, 53. For the following reasons, the Court **DENIES** Defendants' motions.

## I.    PROCEDURAL HISTORY

Plaintiffs sued Defendants in the Court of Common Pleas in Belmont County, Ohio, seeking a judgment declaring the Lease to be "invalid, void, and unenforceable" and an order requiring Defendants to release the Lease. Notice of Removal Ex. A 1, 4, ECF No. 3-1. Plaintiffs asserted three claims: (1) Tri-Star failed to remit timely bonus payments, (2) fraudulent inducement, and (3) invalid notarization. Notice of Removal Ex. A 2–4, ECF No. 1-1. Defendants removed the action to this Court on the basis of diversity jurisdiction and moved to dismiss

for failure to state a claim. Notice of Removal 1–2, ECF No. 1; Wishgard Mot. Dismiss, ECF No. 7; Gulfport Mot. Dismiss, ECF No. 9; Windsor Mot. Dismiss, ECF No. 11; Axebridge Mot. Dismiss, ECF No. 23, Rhino Mot. Dismiss, ECF No. 25; Tri-Star Mot. Dismiss, ECF No. 40.

On November 27, 2012, the Court issued an Opinion and Order granting in part and denying in part Defendants' motions to dismiss. Opinion and Order, ECF No. 45. The Court dismissed Plaintiffs' claims for fraudulent inducement and invalid notarization with prejudice but denied Defendants' motions to dismiss as to Plaintiffs' first claim for failure to make timely payments. *Id.* at 13. With respect to that claim, the Court granted Plaintiffs leave to amend their complaint to clarify whether they were purporting to state a claim for breach of contract or failure to form a contract. *Id.* at 6–7.

Plaintiffs filed an amended complaint two days later. Amend. Compl., ECF No. 46. In that amended complaint, Plaintiffs alleged that Defendants' failure to make timely bonus payments in contravention of the "Confidential Exhibit 'B'— Order of Payment" provision ("Order of Payment") of the Lease constituted a rejection of the Lease by Tri-Star, and thus, a contract was never formed. Amend. Compl. ¶¶ 4-5. Defendants now move to dismiss Plaintiffs' remaining claim. ECF Nos. 48, 49, 51, 52, 53.

## II.    FACTS

Plaintiffs allege the following in their amended complaint. Plaintiffs Charles and Vicki Palmer reside and own property in Belmont County, Ohio, about 140

acres of which is located in Mead Township. Amend. Compl. ¶ 1, ECF No. 46. That tract of land is at issue in this lawsuit. *Id.*

Tri-Star is a corporation doing business in Belmont County, Ohio and is the company that entered into the Lease with Plaintiffs. Defendants Gulfport Energy Corp. ("Gulfport"); Wishgard, LLC ("Wishgard"); Axebridge Energy, LLC ("Axebridge"); Windsor Ohio, LLC ("Windsor"); and Rhino Exploration, LLC ("Rhino") possess an interest in the Lease. *Id.* ¶ 2.

Plaintiffs allege that on or about January 13, 2011, they were approached by a landman, who was an agent or employee of Tri-Star. The landman presented them with the Lease, an addendum, and an Order of Payment, which Plaintiffs signed. Amend. Compl. ¶ 3, ECF No. 46. The effective date of the Lease was backdated to December 30, 2010. *Id.*

A provision titled "Order of Payment" stated, in pertinent part, that:

One dollar ($1.00) per parcel consideration paid to and acknowledged by Lessor upon Lease execution and two thousand dollars ($2,000.00) per net leasehold acre as listed on the Lease to be paid to Lessor within 90 business days from the effective date of this lease; *should Lessee fail to tender payment within the time period specified herein, the Lease shall be deemed to have been rejected by Lessee* and, upon written notification of rejection by regular mail to Lessor, Lessee shall have no further payment obligation to Lessor, and in that event Lessor releases Lessee from said payment obligation.

Amend. Compl. Order of Payment, PAGE ID # 36, ECF No. 46 (emphasis added).[1] Plaintiffs allege that Tri-Star failed to make payments within the ninety-day time frame contained in that clause, and the Lease was therefore deemed rejected by Tri-Star. Amend. Compl. ¶ 4, ECF No. 46.

In addition, two other provisions in the Lease are relevant to Defendants' motions. The first is the "Limitation of Forfeiture" clause, which states:

> This Lease shall never be subject to a civil action or proceeding to enforce a claim of *termination, cancellation, expiration or forfeiture* due to any action or inaction by the Lessee, including, but not limited to making any prescribed payments authorized under the terms of this Lease, unless the Lessee has received written notice of Lessor's demand and thereafter fails or refuses to satisfy or provide justification responding to Lessor's demand within 60 days from the receipt of such notice. If Lessee timely responds to Lessor's demand, but in good faith disagrees with Lessor's position and sets forth the reasons therefore, such a response shall be deemed to satisfy this provision, this Lease shall continue in full force and effect and no further damages (or other claims for relief) will accrue in Lessor's favor during the pendency of the dispute; other than claims for payments that may be due under the terms of this Lease.

Amend. Compl., Paid-Up Oil & Gas Lease 2, PAGE ID # 30, ECF No. 46 (emphasis added).

The other pertinent clause, "Characterization of Payments," states:

> Payments set forth herein are covenants, not special limitations, regardless of the manner in which these payments may be invoked. Any failure on the part of the Lessee to timely or otherwise properly tender payment can never result in an automatic *termination, expiration, cancellation, or forfeiture* of this Lease. Lessor recognizes and acknowledges that oil and gas lease payments, in the form of rental, bonus and royalty, can vary depending on multiple

---

[1] The language as it appears in the Lease is set in all capital letters. For ease of reading, it has been stated in appropriate capital and lowercase letters herein.

factors and that this Lease is the product of good faith negotiations. Lessor hereby agrees that the payment terms, as set forth herein, and any bonus payments paid to Lessor constitute full consideration for the leasehold. Lessor further agrees that the payment terms and bonus payments are final and that Lessor will not seek to amend or modify the lease payments, or seek additional consideration based upon any differing terms which Lessee has or will negotiate with any other lessor/oil and gas owner.

*Id.* (emphasis added).

Defendants assert, among other things, that the Limitation of Forfeiture and Characterization of Payments clauses preclude Plaintiffs from bringing this civil action to declare the Lease invalid.

## III.   STANDARD OF REVIEW

A claim survives a motion to dismiss pursuant to Rule 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal citations omitted).

A court must also "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). In doing so, however, a plaintiff must provide "more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).  "[A] naked assertion . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility . . . ." *Twombly*, 550 U.S. at 557.  Thus, "something beyond the mere possibility of [relief] must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Id.* at 557–58 (internal citations omitted).

## IV.   ANALYSIS

A federal court sitting in diversity is bound to apply the substantive law of the state where the action originated.  *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  The essential elements of a contract under Ohio law are "an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Kostelnik v. Helper*, 96 Ohio St. 3d 1, 3 (2002).  Plaintiffs allege the second element—acceptance—is missing because Tri-Star rejected the Lease by failing to timely remit bonus payments.  Defendants argue Plaintiffs cannot state a claim for relief.

1. **Whether the Limitation of Forfeiture or Characterization of Payment Provisions Preclude Plaintiffs' Claim.**

The Court will first address Defendants' arguments that the amended complaint fails to state a claim because Plaintiffs' relief is barred by the Limitation of Forfeiture and Characterization of Payments provisions of the Lease. Defendants essentially argue that under those provisions, Plaintiffs are not entitled to a declaration that the Lease is invalid (they are entitled only to monetary damages), and Plaintiffs cannot state a claim for termination, cancellation, expiration, or forfeiture without first providing written notice of demand and an opportunity to cure. Because Plaintiffs failed to allege that they provided the contractually required written demand and the opportunity to cure, Defendants contend Plaintiffs failed to state a claim.

The "Limitation of Forfeiture" provision provides in pertinent part that:

> This Lease shall never be subject to a civil action or proceeding to enforce a claim of *termination, cancellation, expiration or forfeiture* due to any action or inaction by the Lessee, including, but not limited to making any prescribed payments authorized under the terms of this Lease, unless the Lessee has received written notice of Lessor's demand and thereafter fails or refuses to satisfy or provide justification responding to Lessor's demand within 60 days from the receipt of such notice.

Amend. Compl., Paid-Up Oil & Gas Lease, PAGE ID # 30, ECF No. 46 (emphasis added).

The "Characterization of Payments" provision provides in pertinent part that: "Any failure on the part of the Lessee to timely or otherwise properly tender

payment can never result in an automatic *termination*, *expiration*, *cancellation*, or *forfeiture* of this Lease." *Id.* (emphasis added).

Defendants argue that Plaintiffs are entitled only to money damages. That argument, however, ignores the first part of the Limitation of Forfeiture provision which allows civil actions for termination, cancellation, expiration, or forfeiture if the prerequisite requirements are met.

Defendants next argue that Plaintiffs failed to allege they provided written notice of demand prior to filing this action, so any claim for termination, cancellation, expiration, or forfeiture must fail. The Court does not construe Plaintiffs' claim as falling within any of those categories, however. Those terms have unique definitions and are commonly understood as actions one can take only to an existing contract.[2] Rather, Plaintiffs assert the Lease was never

---

[2]For example, Black's law dictionary defines "cancellation" as "[a]n annulment or termination of a promise or an obligation." Black's Law Dictionary (9th ed. 2009). It defines "expiration" as "[a] coming to an end; esp., a formal termination on a closing date . . . ." *Id.* "Termination" of a conditional contract is defined as "[t]he act of putting an end to all unperformed portions of a conditional contract." *Id.* And it defines a "forfeiture clause" of a contract as "a contractual provision stating that, under certain circumstances, one party must forfeit something to the other." *Id.*

On the other hand, "rejection" terminates an offeree's power of acceptance and precludes the formation of a contract. *See, e.g., Auto-Owners Mut. Ins. Co. v. Mohammed*, 195 Ohio App. 3d 224, 231 (Ohio Ct. App. 2nd Dist. 2011); *Fout v. Germain Toyota-Isuzu*, No. 88 AP-356, 1989 WL 10339, at *4 (Ohio Ct. App. 10th Dist. Feb. 9, 1989) ("The distinction between rejection and cancellation is that, if the policy application was rejected, insurance was never in effect, even for one day, where if the policy was cancelled, the insurance took effect on the date the debt was incurred and was terminated at a point later in time."); *Chandak v. Roschman*, No. 1-82-19, 1982 WL 621923, at *3–4 (Ohio Ct. App. 3d Dist. Dec. 14, 1982).

formed because it was *rejected* by Tri-Star, [3] and ostensibly, that there never was a contract that could expire, terminate, be cancelled, or from which a forfeiture could be invoked.

Additionally, if no contract existed, Defendants cannot invoke the Limitation of Forfeiture or Characterization of Payment provisions because those provisions govern only if there is a contract. *See May v. State Farm Ins. Co.*, No. 90AP–1407, 1991 WL 81925, at *2 (Ohio Ct. App. May 14, 1991) (finding provision regarding cancellation inapplicable when finding contract void *ab initio*).

Thus, the Court rejects Defendants' argument that the Limitation of Forfeiture and Characterization of Payments provisions preclude Plaintiffs' claim.

## 2. Whether the Order of Payment Provision Requires Written Notice to Constitute Rejection

Defendants also argue that, under the Order of Payment provision, Tri-Star must have taken two actions to reject the Lease: (1) fail to remit bonus payments within ninety days from the signing of the Lease, and (2) provide written notification of such rejection to Plaintiffs. Defendants contend that Plaintiffs failed to allege the second of these requirements and thus have failed to state a claim.

---

[3] Specifically, Plaintiffs argue that payment of the bonus money was a condition precedent to Defendants' acceptance; in other words, failure to pay bonus money amounted to a rejection. Resp. 6, ECF No. 57. To the extent Plaintiffs now seek to argue the Lease is invalid because it lacked consideration, the Court will not consider such an argument. It was not articulated in the complaint or amended complaint. The same is true for any breach of contract claim Plaintiffs now argue. *Id.* at 9. Plaintiffs' claim is limited to a claim that Tri-Star rejected the Lease.

Defendants are correct that Plaintiffs do not allege in their amended complaint that Tri-Star provided Plaintiffs written notice of rejection. Nonetheless, Defendants prevail on this argument only if rejection required written notice to Plaintiffs.[4]  The Court therefore considers whether the Order of Payment required both failure to pay and written notice.

In their motions, Defendants merely state that written notice is an express requirement to invoke the provision contained within the Order of Payment. Plaintiffs argue Defendants' interpretation of the lease would render Defendants' obligations illusory.

The Court need not address Plaintiffs' argument because Defendants' assertion is not necessarily correct.  The Lease does not clearly require notice before it can be deemed rejected by Tri-Star.

The Order of Payment provision states:

> [S]hould Lessee fail to tender payment within the time period specified herein, *the Lease shall be deemed to have been rejected by Lessee* and, upon written notification of rejection by regular mail to Lessor, Lessee shall have no further payment obligation to Lessor, and in that event Lessor releases Lessee from said payment obligation.

Amended Comp., PAGE ID # 256, ECF No. 46 (emphasis added).

The clause, "should Lessee fail to tender payment within the time period specified herein, the Lease shall be deemed to have been rejected by Lessee

---

[4] Defendants argue Plaintiffs admitted that rejection required notice.  The portion of Plaintiffs' response brief Defendants cite is ambiguous at best and will not be construed as a concession on that particular point.

. . . .," can fairly be read to mean that the failure to remit bonus payments automatically constitutes rejection. The next part of the sentence, "and, upon written notification . . . .," could reasonably mean that although the Lease is then deemed rejected by Tri-Star, and the Lessors are thereby relieved of *their* obligations, Tri-Star is still bound to *its* obligations under the Lease until it provides written notice of the rejection to the Lessors.

While the Court is not rendering a final decision on the meaning of the provision, it rejects Defendants' perfunctory statements that the Order of Payment provision expressly required written notification before failure to make bonus payments could constitute a rejection of the Lease. Therefore, Plaintiffs' failure to allege that they received written notice of rejection from Tri-Star does not bar their claim.

### 3. Whether Tri-Star Could Waive Its Right to Reject the Lease under the Order of Payment Provision

Defendants further assert that the "Order of Payment" provision was for Tri-Star's benefit and thus only Tri-Star could waive it; it does not grant the Lessors the right to terminate the Lease for nonpayment of bonus money.

Defendants cite two decisions from Illinois appellate courts and Corbin on Contracts in support of this assertion. *McAnelly v. Graves*, 467 N.E.2d 377 (Ill. Ct. App. 5th Dist. 1984), and *Batterman v. Consumers Illinois Water Co.*, 634 N.E.2d 1235 (Ill. Ct. App. 3rd Dist. 1994). Even assuming, *arguendo*, that under Ohio law, contract provisions for the benefit of one party may be waived only by

that party, the cases cited by Defendants are inapposite as they do not involve conditions precedent to the formation of a contract.[5] Here, Plaintiffs apparently seek a judgment that the payment of bonus money was a condition precedent to *formation* of the contract, and the contract language is reasonably susceptible to such an interpretation.

Regardless, Defendants' arguments that the condition was for the benefit of Tri-Star conflate which condition Plaintiffs contend is at issue in this case. Plaintiffs concede the condition precedent for Tri-Star's *obligation* to pay the signing bonus—that payment of the signing bonus was contingent on review and approval of title, review of co-op parcels, and final approval of management— was for Tri-Star's benefit. Tri-Star could have waived that obligation and decided to accept the Lease (and pay the bonus payments) even if any of the three conditions were not met. That does not, however, necessarily mean the alleged condition precedent to *formation* of the contract—that payment of bonus payments is required for Tri-Star's acceptance—is for Tri-Star's benefit and is waivable by Tri-Star.

_____

[5] For example, *McAnelly v. Graves*, 467 N.E.2d 377, 379 (Ill. App. Ct. 5th Dist. 1984), distinguished between conditions precedent to the formation of a contract and conditions precedent to a party's obligation to perform under an otherwise valid contract. While the defendants in that case had argued the condition of obtaining necessary mining permits was a condition precedent to the formation of a contract, the court found it was a condition precedent to the plaintiff's obligation to perform, not a condition precedent to formation. *Id.* The plaintiff had the right to waive that condition and agree to perform his obligations even if he had not obtained the necessary permits. If the plaintiff waived the condition and elected to perform his obligations, the contract would continue to bind the defendants. *Id.* at 380. Here, the Lease specifically says that failure to pay the bonus money constitutes rejection of the Lease, and as it goes to formation, *McAnelly* (and the other cases Defendants rely on) is distinguishable.

**4.  Alleged Tender of Partial Payment.**

Defendants also argue that Plaintiffs' claim of rejection fails because Tri-Star timely tendered partial payment of the bonus money to Plaintiffs, who accepted the partial payment.  Defendants aver that the act of accepting payment precludes Plaintiffs from claiming the lack of a contract, that partial performance is sufficient to establish performance, and that Plaintiffs are estopped from now arguing against the existence of the Lease.

Because these arguments rely on evidence beyond the face of the complaint, they are not appropriate at this stage.  Although Plaintiffs briefly address the argument in their response brief, the Court has not provided notice of an intent to convert the motion to one for summary judgment and concludes it is better addressed after all parties have had notice and an opportunity to present all relevant evidence.  Thus, Defendants may raise this argument in a motion for summary judgment.

## V.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motions to dismiss Plaintiffs' claim that Tri-Star rejected the Lease.

Finally, while Defendants are entitled to continue to submit separate motions if they wish, the Court notes that most of the arguments submitted in the two rounds of briefing have overlapped, and the motions were substantially the same.  To the extent Defendants agree to do so, the Court would prefer if Defendants hereinafter submitted joint briefs whenever possible and submitted

separate briefs only to the extent a defendant wishes to raise an argument not joined by the others.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**